THE STATE OF NORTH CAROLINA v. ADRIA JOY HINKLE AND ANDREW COOK, DEFENDANTS

No. COA07-1014

(Filed 15 April 2008)

**Criminal Law— littering—euthanized animals in private dumpster**

A private dumpster is a litter receptacle within the meaning of the littering statute, and the trial court erred by denying defendants' motion to dismiss charges arising from placing animals which had been euthanized into a private dumpster. Essential to the crime of littering is that the litter be placed somewhere other than a litter receptacle. N.C.G.S. § 14-399.

Appeal by defendants from judgments entered 2 February 2007 by Judge Cy A. Grant in Hertford County Superior Court. Heard in the Court of Appeals 20 February 2008.

*Attorney General Roy Cooper, by Assistant Attorney Generals Catherine F. Jordan and LaToya B. Powell, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant Hinkle.*

*A. Jackson Warmack, Jr., for defendant Hinkle.*

*Zuckerman Spaeder LLP, by Blair G. Brown and Lisa J. Stevenson, for defendant Hinkle.*

*Edwards & Trenkle PLLC, by Mark E. Edwards, for defendant Cook.*

ELMORE, Judge.

Adria Joy Hinkle (defendant Hinkle) and Andrew Cook (defendant Cook) (together, defendants) were each convicted by a jury of one count of littering. The trial judge imposed on each defendant a ten day suspended sentence, court costs, a $1,000.00 fine, $2,987.50 in restitution, a $200.00 community service fee, and fifty hours of community service, which was later reduced to twenty-four hours of community service. The court also ordered that the van used by defendants be forfeited for the use and benefit of the Ahoskie Police Department. Defendants now appeal. For the reasons stated below, we vacate the judgments of the trial court, the orders of forfeiture, and the orders of restitution.

On 15 June 2005, defendants were employed by People for the Ethical Treatment of Animals (PETA). Defendant Hinkle was an assistant manager of PETA's Community Animal Project (the CAP program). The CAP program's objective was "to improve quality of life and to also provide a humane death for animals." PETA's headquarters is in Norfolk, Virginia, but it began employing the CAP program in northeastern North Carolina in 2000 or 2001. PETA "provid[ed] death by lethal injection to animals waiting to die by carbon monoxide poisoning, gunshot and eventually later on injections of a paralytic drug that caused them to suffocate while they were fully aware." Defendant Hinkle's CAP responsibilities included the euthanasia of unwanted animals in the Bertie County animal shelter. Hinkle used a PETA van to travel to Bertie County and pick up

the animals from the shelter. She then euthanized the animals in the van and was supposed to transport the carcasses back to Virginia for cremation.

Defendant Cook worked as a project manager in PETA's information technology department and was volunteering for the CAP program on 15 June 2005.

It is undisputed that the following occurred on 15 June 2005: Defendants acquired three cats from the Ahoskie Animal Hospital and defendant Hinkle euthanized the cats in the back of the van. Defendants placed the dead cats inside a heavy duty black trash bag. Defendants acquired eighteen dogs from the Bertie County animal shelter and defendant Hinkle euthanized the dogs and then placed each dead dog inside a heavy duty black trash bag. Defendants pulled into the Newmarket Shopping Center in Ahoskie and then drove behind a Piggly Wiggly store. Defendant Hinkle stopped the van next to a private dumpster, which had a sign affixed to it saying, "notice, private use only, violators will be prosecuted." The dumpster belonged to D & E Properties, Inc. Defendant Hinkle instructed defendant Cook to put the black plastic bags containing the dead animals into the dumpster, which he did. Officers from the Bertie County Sheriff's office and Ahoskie Police Department observed defendants putting the black plastic bags into the dumpster and arrested defendants as they drove away from the dumpster.[1]

On 15 June 2005, the State issued arrest warrants for defendants for the unlawful disposal of dead animals (N.C. Gen. Stat. § 106-403 (2005)), felony cruelty to animals (N.C. Gen. Stat. § 14-360 (2005)), and second degree trespass (N.C. Gen. Stat. § 14- 159.13 (2005)). Superceding warrants were issued on 13 October 2005 for obtaining property by false pretenses (N.C. Gen. Stat. § 14-100 (2005)) and felony cruelty to animals (N.C. Gen. Stat. § 14-360 (2005)). On 31 October 2005, defendants were indicted on multiple counts of obtaining property by false pretenses, felony cruelty to animals, and litter-

---

1. A D & E Properties employee noticed that the dumpster contained dead animals on 19 May 2005. He notified the Ahoskie Police Department, and an officer confirmed that twenty-one dead dogs had been placed in the dumpster. Seventeen more dead dogs and three dead cats were found in the dumpster on 2 June 2005. One week later, on 9 June 2005, twenty more dead dogs were found in the dumpster. A Bertie County animal control officer confirmed that the dead dogs were the same dogs that PETA had obtained from the Bertie County animal shelter earlier in the week. Officers had both defendants and the dumpster under surveillance on 15 June 2005. Defendant Hinkle admitted that she disposed of euthanized animals in the dumpster on 2 June 2005.

**STATE v. HINKLE**

[189 N.C. App. 762 (2008)]

ing (N.C. Gen. Stat. § 14-399 (2005)). On 16 November 2005, the State voluntarily dismissed nine counts of unlawful disposal of dead animals and one count of second degree trespass as charged against each defendant.[2] The State cited as its reason that defendants were "indicted on felony charges and related misdemeanors."

At the close of the State's evidence, defendants moved to dismiss all charges based on insufficiency of the evidence. The trial court reserved its ruling until the close of all of the evidence. Defendants renewed their motion at the close of all of the evidence, and filed a motion to dismiss the littering indictments or, in the alternative, to consolidate the littering indictments into one charge. The trial court allowed defendants' motions to dismiss all counts of felony cruelty to animals, but submitted to the jury eight lesser-included counts of misdemeanor cruelty to animals as to each defendant. The trial court dismissed the three counts of obtaining property by false pretenses as against defendant Cook, but not as against defendant Hinkle. The trial court denied defendants' motions to dismiss the littering charges, but submitted to the jury only one count of littering as to each defendant because of multiplicity concerns. The jury returned verdicts of not guilty for all charges except the littering charges.

Defendants argue that the trial court erred by denying defendants' motion to dismiss the littering charges because the evidence was insufficient to show that they disposed of the litter other than in a litter receptacle. At the close of the State's evidence, defendants argued that "[t]he littering statute prohibits someone from disposing of litter on any public or private property not owned by the person except in a litter receptacle. If you put it in the litter receptacle it's

---

2. It is not clear why the State chose to prosecute defendants for littering instead of unlawful disposition of dead domesticated animals or second degree trespass.

N.C. Gen. Stat. § 106-403 states that "[i]t is the duty of the owner of domesticated animals that die from any cause and the owner or operator of the premises upon which any domesticated animals die, to bury the animals to a depth of at least three feet beneath the surface of the ground within 24 hours after knowledge of the death of the domesticated animals, or to otherwise dispose of the domesticated animals in a manner approved by the State Veterinarian." N.C. Gen. Stat. § 106-403 (2005). Knowing and willful violation of N.C. Gen. Stat. § 106-403 is a Class 2 misdemeanor. N.C. Gen. Stat. § 106-405 (2005).

"A person commits the offense of second degree trespass if, without authorization, he enters or remains on premises of another. . . [t]hat are posted, in a manner reasonably likely to come to the attention of intruders, with notice not to enter the premises." N.C. Gen. Stat. § 14-159.13 (2005). Second degree trespass is a Class 3 misdemeanor. *Id.*

not littering. The point is they put these bags in a litter receptacle, the dumpster." Defense counsel also argued that

> the appropriate charge that the State should have brought here was a charge of trespass and not littering or perhaps a charge of dumping animals in an improper way. . . .
>
> And originally, if they were charged with that that may have been an appropriate charge but the State has chosen to proceed on littering charge and as [counsel] pointed out to you it's not covered by the statute.

The State countered that because the dumpster was a private receptacle, defendants littered by placing dead animals into the dumpster.

> Our review of the trial court's denial of a motion to dismiss is well understood. [W]here the sufficiency of the evidence . . . is challenged, we consider the evidence in the light most favorable to the State, with all favorable inferences. We disregard defendant's evidence except to the extent it favors or clarifies the State's case. When a defendant moves for dismissal, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion.

*State v. Dexter*, 186 N.C. App. 587, 595, 651 S.E.2d 900, 905 (2007) (citations and quotations omitted) (alterations in original).

The crime in question is littering, which N.C. Gen. Stat. § 14-399 defines, in relevant part, as follows:

> (a) No person, including any firm, organization, private corporation, or governing body, agents or employees of any municipal corporation shall intentionally or recklessly throw, scatter, spill or place or intentionally or recklessly cause to be blown, scattered, spilled, thrown or placed or otherwise dispose of *any litter* upon any public property or private property not owned by the person within this State or in the waters of this State including any public highway, public park, lake, river, ocean, beach, campground, forestland, recreational area, trailer park, highway, road, street or alley except:

(1) When the property is designated by the State or political subdivision thereof for the disposal of garbage and refuse, and the person is authorized to use the property for this purpose; or

(2) Into a *litter receptacle* in a manner that the litter will be prevented from being carried away or deposited by the elements upon any part of the private or public property or waters.

N.C. Gen. Stat. § 14-399(a) (2005) (emphasis added). The statute does not define "litter receptacle," but defines "litter" as:

any garbage, rubbish, trash, refuse, can, bottle, box, container, wrapper, paper, paper product, tire, appliance, mechanical equipment or part, building or construction material, tool, machinery, wood, motor vehicle or motor vehicle part, vessel, aircraft, farm machinery or equipment, sludge from a waste treatment facility, water supply treatment plant, or air pollution control facility, *dead animal*, or discarded material in any form resulting from domestic, industrial, commercial, mining, agricultural, or governmental operations. While being used for or distributed in accordance with their intended uses, "litter" does not include political pamphlets, handbills, religious tracts, newspapers, and other similar printed materials the unsolicited distribution of which is protected by the Constitution of the United States or the Constitution of North Carolina.

N.C. Gen. Stat. § 14-399(i)(4) (2005) (emphasis added).

It is clear that defendants placed litter into a private dumpster. The parties disagree about whether a private dumpster is a "litter receptacle" within the meaning of the statute. We hold that it is. Our Supreme Court has previously described a dumpster as a "receptacle[]" for "trash removal." *Big Bear of N.C., Inc. v. High Point*, 294 N.C. 262, 269, 240 S.E.2d 422, 426 (1978). By choosing the word "receptacle," the legislature intended to include a broad range of containment vessels. That range includes dumpsters, which are defined as "containers designed for receiving, transporting, and dumping waste materials."[3] The American Heritage College Dictionary 426 (3d ed. 1997).

---

3. We recognize that the complete dictionary entry is "Dumpster . . . A trademark used for containers designed for receiving, transporting, and dumping waste materials." *The American Heritage College Dictionary* 426 (3d ed. 1997). The parties and the U.S. Supreme Court use the generic term, "dumpster," and we follow suit. *See Yarborough v. Alvarado*, 541 U.S. 652, 656, 158 L. Ed. 2d 938, 946 (2004) ("Soto pulled

As defendants assert, the State did not prove that the dumpster in question was not a litter receptacle. In fact, the State's witnesses testified that the dumpster was used to hold refuse from the Piggly Wiggly and the rest of the shopping center, and that there were multiple bags full of trash in the dumpster at the time defendants deposited the dead animals.

The State instead argues that the language in section 14-399(a), "except . . . into a litter receptacle," is not a part of the statutory definition of "littering" and instead is an exception to the crime of littering. Although it is well established that the State bears the burden of production and persuasion as to each element of a crime, "exceptions" to crimes are not considered elements for this purpose and are instead considered to be affirmative defenses. *See State v. Trimble*, 44 N.C. App. 659, 665 n.2, 262 S.E.2d 299, 303 n.2 (1980) (explaining the difficult process of distinguishing elements and exceptions). Defendants bear the burdens of production and persuasion as to each affirmative defense; the State does not bear the burden of proving that a defendant *does not* fall within an exception. *Id.* As the Court noted in *Trimble*, we must be mindful when drawing the distinction between elements of an offense and exceptions to that offense.

> When one thinks in terms of circumscribing the parameters of criminal liability, disregarding for the moment the allocation of the burden of proof, there is little difference between requiring the State to show that an individual's actions are within the circumscribed area, and requiring the defendant to show that his actions are without the circumscribed area: in either case the prohibited range of conduct is the same.
>
> The procedural implications with respect to the burden of proof are, however, quite serious. As Mr. Justice Powell, in his dissent in *Patterson* . . . explains: "For example, a state statute could pass muster . . . if it defined murder as mere physical contact between the defendant and the victim leading to the victim's death, but then set up an affirmative defense leaving it to the defendant to

out a .357 Magnum and approached the driver . . . who was standing near the truck emptying trash into a dumpster."). However, we acknowledge that our state courts have been less consistent in their use of the term. *Compare Rhyne v. K-Mart Corp.*, 358 N.C. 160, 164, 594 S.E.2d 1, 5 (2004) ("Roberts, one of the employees, inquired of plaintiffs as to whether they had been rummaging through K-Mart's dumpsters.") *with State v. Howell*, 343 N.C. 229, 233, 470 S.E.2d 38, 40 (1996) ("The victim was a twenty-nine-year-old black prostitute from Hickory whose body was found burning in a Dumpster . . . .").

prove that he acted without culpable *mens rea*. The State, in other words, could be relieved altogether of responsibility for proving *anything* regarding the defendant's state of mind, provided only that the face of the statute meets the Court's drafting formulas."

*Id.* (quoting *Patterson v. New York*, 432 U.S. 197, 224 n.8, 53 L. Ed. 2d 281, 301 n.8 (1977) (Powell, J., dissenting)) (emphasis in original).

With these grave considerations in mind, we reiterate that "there are no magic words for creating an exception to an offense. Neither is placement of a phrase controlling. The determinative factor is the nature of the language in question. Is it part of the definition of the crime or does it withdraw a class from the crime?" *State v. Brown*, 56 N.C. App. 228, 230, 287 S.E.2d 421, 423 (1982); *see also State v. Connor* 142 N.C. 700, 702, 55 S.E. 787, 788 (1906) ("[T]he rule and its application depend[] not so much on the placing of the qualifying words, or whether they are preceded by the terms, 'provided' or 'except'; but rather on the nature, meaning and purpose of the words themselves.").

Therefore, we examine the nature of the littering statute's language and ask whether "[i]nto a litter receptacle" is part of the definition of the crime or whether it withdraws a class from the crime. It is clear that "[i]nto a littering receptacle" is part of the definition of the crime. If we read section (a) up to the word "except," then section (a) does not describe the complete crime of littering. Without the "except . . . [i]nto a litter receptacle" language, placing a broken rubber band into a trash can at our Court would be littering. Likewise, throwing a spent coffee cup into a trash can at the mall would be littering. Such a reading of the statute is inconsistent with both the plain language of the statute and common sense. Essential to the crime of littering is that the litter be placed somewhere other than a litter receptacle.

Accordingly, we hold that the trial court erred by denying defendants' motion to dismiss the littering charges because the State failed to present substantial evidence that the dumpster was not a litter receptacle. We therefore vacate the judgments against both defendants.

Because we vacate the judgments against both defendants, we also vacate the orders of restitution against both defendants. We do not reach the other issues presented by defendants in their appeal.

We vacate case numbers 05 CRS 003853 and 05 CRS 003859, the orders· of forfeiture contained therein, and orders of restitution 05 CRS 3510 and 05 CRS 3550.

Vacated.

Judges STROUD and ARROWOOD concur.