**STATE v. MATHER**

[221 N.C. App. 593 (2012)]

STATE OF NORTH CAROLINA v. WILLIAM YALE MATHER

No. COA11-1393

(Filed 17 July 2012)

**Firearms and Other Weapons—carrying a concealed handgun—
indictment sufficient—exception defense—no fatal variance**

The trial court did not err in a carrying a concealed handgun
case by denying defendant's motion to dismiss based on an
alleged fatal variance between the allegations in the charging
document and the evidence at trial. The indictment was sufficient
because the exception in N.C.G.S. § 14-269(a1)(2) is a defense to,
not an essential element of, the crime of carrying a concealed
weapon. Further, the evidence corresponded to the essential and
material allegations of the magistrate's order and the evidence
showing that defendant had a concealed handgun permit and con-
sumed alcohol at the bar related only to the defense set forth in
the concealed handgun permit exception.

Appeal by defendant from judgment entered 5 April 2011 by
Judge William R. Pittman in Moore County Superior Court. Heard in
the Court of Appeals 5 April 2012.

*Attorney General Roy Cooper, by Assistant Attorney General
Nancy E. Scott, for the State.*

*Geeta Nadia Kapur, for the defendant.*

THIGPEN, Judge.

William Yale Mather ("Defendant") appeals from a judgment con-
victing him of carrying a concealed handgun in violation of N.C. Gen.
Stat. § 14-269(a1) (2011). On appeal, Defendant argues the trial court
erred in denying his motion to dismiss because there was a fatal variance
between the allegations in the charging document and the evidence at
trial. After careful review, we conclude the trial court did not err.

The evidence of record tends to show the following: On the
evening of 30 May 2009, Defendant, Defendant's girlfriend, and sev-
eral other people went to the Broad Street Bar and Grill ("Bar and
Grill") in Southern Pines, North Carolina. While there, Defendant
drank several beers and played pool. After several hours had passed
at the Bar and Grill, a bouncer approached Defendant and asked

whether he had a weapon on him. Defendant did not answer, and the bouncer told Defendant to leave. Defendant complied and left the Bar and Grill in a Sandhills Transportation burgundy taxi van.

Later that evening, Defendant returned and attempted to reenter the Bar and Grill. The bouncer told Defendant he could not go inside. Defendant became "agitated[,]" and the bouncer called the Southern Pines Police Department. Defendant walked back to the burgundy taxi van.

Officer Chris Coleman ("Officer Coleman") of the Southern Pines Police Department responded to the call from the Bar and Grill bouncer and saw the burgundy taxi van in the Bar and Grill parking lot. Officer Coleman approached the van. Defendant was standing in the doorway of the van, talking to the cab driver. When Defendant saw Officer Coleman, he told Officer Coleman that he had a permit to carry a concealed weapon. Defendant showed Officer Coleman his concealed weapon permit, and Officer Coleman deemed the concealed weapon permit to be valid. Officer Coleman asked Defendant whether he had been drinking, and Defendant admitted that he had been drinking beer that evening at the Bar and Grill. Officer Coleman removed the concealed weapon from Defendant's pocket and arrested Defendant.

On 9 August 2009, Defendant was charged with carrying a concealed handgun in violation of N.C. Gen. Stat. § 14-269(a1). The magistrate's order charging Defendant alleged that "the defendant . . . unlawfully and willfully did carry concealed about the defendant's person while off the defendant's own premises a gun, .25 CAL BROWNING PISTOL[,]" which is the language of N.C. Gen. Stat. § 14-269(a1)(1).

On 12 November 2009, Defendant was found guilty in District Court of carrying a concealed handgun in violation of N.C. Gen. Stat. § 14-269(a1). Defendant appealed to Superior Court. On 5 April 2011, a jury found Defendant guilty of carrying a concealed handgun in violation of N.C. Gen. Stat. § 14-269(a1). The trial court entered a judgment consistent with the jury's verdict, sentencing Defendant to 30 days incarceration in the Moore County Jail. However, the trial court suspended the sentence and imposed an active sentence of 7 days incarceration and 18 months unsupervised probation. From this judgment, Defendant appeals.

## I: Sufficiency of the Indictment and Fatal Variance

On appeal, Defendant argues the trial court erred in denying Defendant's motion to dismiss because the evidence at trial "proved an offense not charged by the criminal pleading[.]" Defendant argues there was a fatal variance between the charging document—in this case, the magistrate's order—and the evidence. Before we reach the question of whether there was a fatal variance between the indictment and the evidence, we believe it is necessary to determine whether the indictment itself was sufficient.

Defendant did not object to the sufficiency of the indictment at trial and does not argue on appeal that the indictment was insufficient. However, we believe an examination of this question is necessary before we determine whether there was a fatal variance, because, in this case, the questions are intertwined.[1] Defendant essentially argues the magistrate's order charged him with the wrong crime, and the State's evidence "focused on the fact that [Defendant] had been drinking [alcohol]." However, Defendant also states in his brief that the "charging document does not allege that [Defendant] had consumed alcohol[.]" Defendant repeats and emphasizes that Defendant was "charged . . . with carrying a concealed gun, not carrying a concealed gun while drinking alcohol." In constructing his argument that there was a fatal variance between the charging document and the proof, Defendant implies that the consumption of alcohol is an essential element of the charge of carrying a concealed weapon, thus interposing the question of the sufficiency of the indictment.

"[W]hen an indictment has failed to allege the essential elements of the crime charged, it has failed to give the trial court subject matter jurisdiction over the matter, and the reviewing court must arrest judgment." *State v. Kelso*, 187 N.C. App. 718, 722, 654 S.E.2d 28, 31-32 (2007) (citation omitted).

---

1. This Court may address the question of the sufficiency of an indictment *ex mero motu*. "There can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation[;] [i]n the absence of an accusation the court acquires no jurisdiction whatever, and if it assumes jurisdiction a trial and conviction are a nullity." *McClure v. State*, 267 N.C. 212, 215, 148 S.E.2d 15, 17-18 (1966). Pursuant to N.C. Gen. Stat. § 15A-1446(d)(1) (2011), a trial court's lack of jurisdiction over the offense of which the defendant was convicted "may be the subject of appellate review even though no objection, exception or motion has been made in the trial division." *Id.* In fact, "if the offense is not sufficiently charged in the indictment, this Court, *ex mero motu*, will arrest the judgment." *State v. Walker*, 249 N.C. 35, 38, 105 S.E.2d 101, 104 (1958); *see also State v. Cunningham*, 34 N.C. App. 72, 74, 237 S.E.2d 334, 335-36 (1977).

No indictment, whether at common law or under a statute, is sufficient if it does not accurately and clearly allege all of the constituent elements of the crime sought to be charged. However, there is no requirement that an indictment must follow the precise language of the statute provided that the pleading charges facts which are sufficient to enable the indictment to fulfill its essential purposes.

*State v. Hunter,* 299 N.C. 29, 41, 261 S.E.2d 189, 197 (1980) (internal citations omitted). Two purposes of an indictment are "to make clear the offense charged so that the investigation may be confined to that offense, that proper procedure may be followed, and applicable law invoked; [and] . . . to put the defendant on reasonable notice so as to enable him to make his defense." *State v. Leonard,* ____ N.C. App. ____, ____, 711 S.E.2d 867, 872, *disc. review denied,* 365 N.C. 353, 717 S.E.2d 746 (2011) (quotation omitted). "A[n] . . . indictment [m]erely charging in general terms a breach of the statute and referring to it in the indictment is not sufficient." *State v. McBane,* 276 N.C. 60, 65, 170 S.E.2d 913, 916 (1969) (quotation omitted); *see also State v. Billinger,* ____ N.C. App. ____, ____, 714 S.E.2d 201, 207 (2011) ("[I]t is well established that [m]erely charging in general terms a breach of [a] statute and referring to it in the indictment is not sufficient to cure the failure to charge the essentials of the offense in a plain, intelligible, and explicit manner").

In this case, the magistrate's order charged Defendant with a violation of N.C. Gen. Stat. § 14-269(a1), alleging that "the defendant . . . unlawfully and willfully did carry concealed about the defendant's person while off the defendant's own premises a gun, .25 CAL BROWNING PISTOL."

The statute defining the crime of carrying a concealed weapon, N.C. Gen. Stat. § 14-269(a1), provides the following:

It shall be unlawful for any person willfully and intentionally to carry concealed about his person any pistol or gun except in the following circumstances:

(1) The person is on the person's own premises.

(2) The deadly weapon is a handgun, the person has a concealed handgun permit issued in accordance with Article 54B of this Chapter or considered valid under G.S. 14-415.24, and the person is carrying the concealed handgun in accordance with the scope of the concealed handgun permit as set out in G.S. 14-415.11(c).

(3) The deadly weapon is a handgun and the person is a military permittee as defined under G.S. 14-415.10(2a) who provides to the law enforcement officer proof of deployment as required under G.S. 14-415.11(a).

*Id.* Our Supreme Court, citing an earlier version of N.C. Gen. Stat. § 14-269, has stated the following: "The essential elements of the statutory crime of carrying a deadly weapon are these: (1) The accused must be off his own premises; (2) he must carry a deadly weapon; (3) the weapon must be concealed about his person." *State v. Williamson*, 238 N.C. 652, 654, 78 S.E.2d 763, 765 (1953) (citations omitted).

On appeal, Defendant posits that the evidence produced by the State at trial disproved that Defendant violated N.C. Gen. Stat. § 14-269(a1), because the uncontroverted evidence shows that Defendant had a concealed handgun permit. However, the State's evidence also shows that Defendant was not "carrying the concealed handgun in accordance with the scope of the concealed handgun permit as set out in G.S. 14-415.11(c)[.]" N.C. Gen. Stat. § 14-269(a1). N.C. Gen. Stat. § 14-415.11(c)(1) (2011) provides that "a permit does not authorize a person to carry a concealed handgun in . . . [a]reas prohibited by G.S. . . . 14-269.3[.]" *Id.* N.C. Gen. Stat. § 14-269.3(a) (2011) provides that "[i]t shall be unlawful for any person to carry any gun, rifle, or pistol into any assembly where a fee has been charged for admission thereto, or into any establishment in which alcoholic beverages are sold and consumed. Any person violating the provisions of this section shall be guilty of a Class 1 misdemeanor." *Id.* Moreover, N.C. Gen. Stat. § 14-415.11(c2) (2011), provides the following:

It shall be unlawful for a person, with or without a permit, to carry a concealed handgun while consuming alcohol or at any time while the person has remaining in the person's body any alcohol or in the person's blood a controlled substance previously consumed, but a person does not violate this condition if a controlled substance in the person's blood was lawfully obtained and taken in therapeutically appropriate amounts or if the person is on the person's own property.

*Id.*

In determining whether the indictment is sufficient in this case, we must examine N.C. Gen. Stat. § 14-269(a1) and the law regarding exceptions to crimes. N.C. Gen. Stat. § 14-269(a1) defines the crime of carrying a concealed weapon as "willfully and intentionally . . . carry[ing] concealed about his person any pistol or gun[.]" *Id.* N.C.

Gen. Stat. § 14-269(a1) then sets forth three exceptions, one of which is that the person has a valid concealed handgun permit and is carrying the concealed handgun in accordance with the scope of the permit. *See* N.C. Gen. Stat. § 14-269(a1)(2). The evidence in this case shows that Defendant was carrying a concealed handgun off his own premises; the evidence also shows that Defendant had a concealed handgun permit, but he was not carrying the concealed handgun in accordance with the scope of the concealed handgun permit. Based on the foregoing, we believe the crux of the issue in this case is whether the exception provided in N.C. Gen. Stat. § 14-269(a1)(2) is an essential element of the crime defined by N.C. Gen. Stat. § 14-269(a1). If the exception is an essential element of the crime of carrying a concealed weapon, the indictment here is insufficient because it does not charge that Defendant was drinking alcohol at the Bar and Grill; however, if the exception is not an essential element, the indictment sufficiently charges the crime of carrying a concealed weapon.

Whether an exception to a statutorily defined crime is an essential element of that crime has been addressed by our Supreme Court in *State v. Connor*, 142 N.C. 700, 55 S.E. 787 (1906), which stated the following:

> It is well established that when a statute creates a substantive criminal offense, the description of the same being complete and definite, and by subsequent clause, either in the same or some other section, or by another statute, a certain case or class of cases is withdrawn or excepted from its provisions, these excepted cases need not be negatived in the indictment, nor is proof required to be made in the first instance on the part of the prosecution.

*Id.* at 701, 55 S.E. at 788. The *Connor* Court also explained the nature of "qualifications" versus "exceptions" in statutorily defined crimes:

> We find in the acts of our Legislature two kinds of provisos—the one in the nature of an exception, which withdraws the case provided for from the operation of the act, the other adding a qualification, whereby a case is brought within that operation. Where the proviso is of the first kind it is not necessary in an indictment, or other charge, founded upon the act, to negative the proviso; but if the case is within the proviso it is left to the defendant to show that fact by way of defense. But in a proviso of the latter description the indictment must bring the case within the proviso. For, in reality, that which is provided for, in what is called a proviso to the act, is part of the enactment itself.

*Id.* at 703, 55 S.E. at 788-89. "The general rule is that what is necessary to be charged as a descriptive part of the offense is required to be proved; and all of the decisions in this State which we have noted, or which have been called to our attention where the rule has been changed and the burden put on defendant, have been cases where the burden was changed by the statute, or the facts referred to in the exception or proviso related to the defendant personally, or were peculiarly within his knowledge." *Connor*, 142 N.C. at 704, 55 S.E. at 789. The test the *Connor* Court set forth for determining whether an exception in a statutorily defined crime must be alleged in a bill of indictment is the following:

> The test here suggested, however, is not universally sufficient, and a careful examination of the principle will disclose that the rule and its application depends not so much on the placing of the qualifying words, or whether they are preceded by the terms, 'provided' or 'except;' but rather on the nature, meaning and purpose of the words themselves. And if these words, though in the form of a proviso or an exception, are in fact, and by correct interpretation, but a part of the definition and description of the offense, they must be negatived in the bill of indictment. In such case, this is necessary, in order to make a complete statement of the crime for which defendant is prosecuted.

*Connor*, 142 N.C. at 702, 55 S.E. at 788.

The North Carolina Appellate Courts have followed and explained *Connor* in numerous opinions, reiterating the importance of being mindful when drawing the distinction between elements of an offense and exceptions to that offense, due to implications regarding the burden of proof:

> When one thinks in terms of circumscribing the parameters of criminal liability, disregarding for the moment the allocation of the burden of proof, there is little difference between requiring the State to show that an individual's actions are within the circumscribed area, and requiring the defendant to show that his actions are without the circumscribed area: in either case the prohibited range of conduct is the same. The procedural implications with respect to the burden of proof are, however, quite serious. As Mr. Justice Powell, in his dissent in *Patterson* . . . explains: "For example, a state statute could pass muster . . . if it defined murder as mere physical contact between the defendant and the victim leading to the victim's death, but then set up an

affirmative defense leaving it to the defendant to prove that he acted without culpable mens rea. The State, in other words, could be relieved altogether of responsibility for proving *anything* regarding the defendant's state of mind, provided only that the face of the statute meets the Court's drafting formulas."

*State v. Trimble*, 44 N.C. App. 659, 665 n.2, 262 S.E.2d 299, 303 n.2 (1980) (quoting *Patterson v. New York*, 432 U.S. 197, 224 n.8, 97 S. Ct. 2319, 2334, 53 L. Ed. 2d 281, 301 n.8 (1977) (Powell, J., dissenting)) (emphasis in original).

In *State v. Brown*, 56 N.C. App. 228, 287 S.E.2d 421 (1982), this Court analyzed an exception in N.C. Gen. Stat. § 14-74, which defines the crime of larceny by an employee. The defendant in *Brown* argued that the indictment charging larceny by an employee was inadequate because it failed to allege that he was at least sixteen years old. The defendant cited the statutory phrase, "[p]rovided, that nothing contained in this section shall extend to . . . servants within the age of 16 years." *Brown*, 56 N.C. App. at 230, 287 S.E.2d at 423 (quoting N.C. Gen. Stat. § 14-74 (1982)). The defendant contended that "age is an essential element of G.S. 14-74, which must be alleged, proven and charged." *Id*. The *Brown* Court cited *Connor*, stating "there are no magic words for creating an exception to an offense. Neither is placement of a phrase controlling. The determinative factor is the nature of the language in question. Is it part of the definition of the crime or does it withdraw a class from the crime?" *Brown*, 56 N.C. App. at 230, 287 S.E.2d at 423. The *Brown* Court concluded that the indictment was not insufficient for failing to charge that the defendant was over sixteen years old:

> Upon examining G.S. 14-74, we conclude that the phrase in question *withdraws* a class of defendants from the crime of larceny by an employee. The language before the phrase completely and definitely defines the offense. Servants within 16 years of age are excepted from that definition. Because the phrase creates an exception to G.S. 14-74, we hold that age is not an essential element which the indictment must allege and the State initially prove.

*Brown*, 56 N.C. App. at 230-31, 287 S.E.2d at 423. (emphasis in original). The *Brown* Court explained that "[a]ge . . . is a fact particularly within defendant's knowledge[,] [and] [t]o place the burden on defendant to raise the exception to G.S. 14-74 and to prove that he comes within it does not exceed the constitutional limits established." *Brown*, 56 N.C. App. at 231, 287 S.E.2d at 423-24.

In *State v. Hinkle*, 189 N.C. App. 762, 659 S.E.2d 34 (2008), this Court analyzed N.C. Gen. Stat. § 14-399, which defines the crime of littering. Specifically, the *Hinkle* Court addressed the question of whether the phrase "except . . . into a litter receptacle," was part of the statutory definition of littering or an exception to the crime of littering. The *Hinkle* Court came to the following conclusion:

> It is clear that "[i]nto a littering receptacle" is part of the definition of the crime. If we read section (a) up to the word "except," then section (a) does not describe the complete crime of littering. Without the "except . . . [i]nto a litter receptacle" language, placing a broken rubber band into a trash can at our Court would be littering. Likewise, throwing a spent coffee cup into a trash can at the mall would be littering. Such a reading of the statute is inconsistent with both the plain language of the statute and common sense. Essential to the crime of littering is that the litter be placed somewhere other than a litter receptacle.

*Hinkle*, 189 N.C. App. at 769, 659 S.E.2d at 38.

In *State v. Trimble*, 44 N.C. App. 659, 262 S.E.2d 299 (1980), this Court considered whether an exception to a criminal statute should be regarded as an element of the offense or as an affirmative defense. The *Trimble* Court analyzed N.C. Gen. Stat. § 14-401, a criminal statute against putting poisonous foodstuffs in certain public places, which provided that the statute "shall not apply" to poisons used for protecting crops and gardens and for rat extermination. *Id.* The *Trimble* Court applied the following standard in its determination:

> [W]here, as in the instant case, the General Assembly has left open the question of whether a factor is to be an element of the crime or a defense thereto, it is more substantively reasonable to ask what would be a "fair" allocation of the burden of proof, in light of due process and practical considerations, and then assign as "elements" and "defenses" accordingly, rather than to mechanically hold that a criminal liability factor is an element without regard to the implications in respect to the burden of proof.

*Trimble*, 44 N.C. App. at 666, 262 S.E.2d at 303. Applying the forgoing standard, the Court made the following conclusion:

> [W]e hold that the insect control and rat extermination exception in N.C. Gen. Stat. § 14-401 is neither an element of the crime nor an affirmative defense thereto but is instead a "hybrid" factor in determining criminal liability: the State has no initial burden of

producing evidence to show that defendant's actions do not fall within the exception; however, once the defendant, in a non-frivolous manner, puts forth evidence to show that his conduct is within this exception, the burden of persuading the trier of fact that the exception does not apply falls upon the State. In sum, we are not convinced that the exception is a sufficiently "independent, distinct substantive matter of exemption, immunity or defense, beyond the essentials of the legal definition of the offense itself," to put all the "onus" of proof on the defendant[.]

*Trimble*, 44 N.C. App. at 666, 262 S.E.2d at 303-04. (internal citations omitted). The *Trimble* Court further concluded, "it follows from this reasoning that an indictment or warrant for an arrest need not set forth a charge that defendant's conduct is not within the exception to the statute." *Trimble*, 44 N.C. App. at 666, 262 S.E.2d at 304.

We believe the present case is most analogous to *Trimble*. The State has no initial burden of producing evidence to show that Defendant's action of carrying a concealed weapon does *not* fall within an exception to N.C. Gen. Stat. § 14-269(a1); however, once Defendant puts forth evidence to show that his conduct is within an exception—that he had a concealed handgun permit—the burden of persuading the trier of fact that Defendant's action was outside the scope of the exception falls upon the State. Based on the Court's holding in *Trimble*, we conclude that the exception in N.C. Gen. Stat. § 14-269(a1)(2) is a defense, not an essential element of the crime of carrying a concealed weapon, and therefore, the indictment was not insufficient for failing to charge it.

We must now determine whether there was a fatal variance between the indictment and the evidence.

"It is the settled rule that the evidence in a criminal case must correspond with the allegations of the indictment which are essential and material to charge the offense." *State v. Lee*, ____ N.C. App. ____, ____, 720 S.E.2d 884, 889 (2012) (quotation omitted). "A variance occurs where the allegations in an indictment, although they may be sufficiently specific on their face, do not conform to the evidence actually established at trial." *Id.* (quotation omitted). "In order for a variance to warrant reversal, the variance must be material[;] [a] variance is not material, and is therefore not fatal, if it does not involve an essential element of the crime charged." *Id.* (quotation omitted).

"The essential elements of the statutory crime of carrying a deadly weapon are these: (1) The accused must be off his own

premises; (2) he must carry a deadly weapon; (3) the weapon must be concealed about his person." *Williamson*, 238 N.C. at 654, 78 S.E.2d at 765 (1953) (citing N.C. Gen. Stat. § 14-269). Here, the magistrate's order charging Defendant with a violation of N.C. Gen. Stat. § 14-269(a1) alleged that "the defendant . . . unlawfully and willfully did carry concealed about the defendant's person while off the defendant's own premises a gun, .25 CAL BROWNING PISTOL."

The evidence in this case shows that Defendant left his home and entered the Bar and Grill with a handgun concealed about his person. This evidence alone corresponds with the allegations of the indictment which are essential and material to charge the offense of carrying a concealed handgun. *See Lee*, _____ N.C. App. at _____, 720 S.E.2d at 889. The evidence showing that Defendant had a concealed handgun permit and consumed alcohol at the Bar and Grill relate only to the defense set forth in the concealed handgun permit exception to the crime of carrying a concealed handgun and to Defendant's exceeding the scope of that exception. N.C. Gen. Stat. § 14-269(a1)(2).

Because the evidence in this case corresponds to the essential and material allegations of the magistrate's order charging that Defendant carried a concealed handgun in violation of N.C. Gen. Stat. § 14-269, and because the magistrate's order was not insufficient for failing to charge that Defendant was drinking alcohol at the Bar and Grill, we conclude the trial court did not err.

NO ERROR.

Judges ELMORE and GEER concur.