DAVIS, Judge.
 

 *355
 
 In this appeal, we must determine whether the defendant's indictment for felony littering of hazardous waste was facially valid. Because we conclude that her indictment failed to contain an essential element of the crime for which she was charged, we vacate her conviction.
 

 Factual and Procedural Background
 

 The State presented evidence tending to establish the following facts: On 27 April 2014, Angela Marie Rankin ("Defendant") was searching for scrap metal to sell. She noticed a metal tank containing fuel oil near a residential driveway on North Elam Avenue in Greensboro, North Carolina. Upon attempting to move the tank, Defendant realized some amount of "home heating fuel" was contained inside of it. She drained the contents of the tank onto the ground so that the tank "wouldn't be as heavy."
 

 The metal tank was reported stolen to the City of Greensboro Police Department. The
 
 *360
 
 Division of Public Health of the Guilford County Department of Health and Human Services also received a report of "a fuel release that impacted a waterway and soil and roadway inside the Guilford County limits." Upon investigation, it was discovered that the heating oil from the metal tank was the cause of the contamination in the area, and the oil was deemed "a hazardous substance for disposal...."
 

 On 21 July 2014, Defendant was indicted for felony littering of hazardous waste, misdemeanor larceny, and misdemeanor conspiracy to commit larceny. On 5 July 2016, a jury trial was held in Guilford County Superior Court before the Honorable Michael D. Duncan. Defendant moved to dismiss all charges at the close of the evidence, and the trial court dismissed the conspiracy charge.
 

 On 6 July 2016, the jury found Defendant guilty of felony littering of hazardous waste and not guilty of misdemeanor larceny. On 7 July 2016, the trial court sentenced Defendant to 5 to 15 months imprisonment but suspended the sentence and placed her on supervised probation for 18 months. Defendant filed a timely notice of appeal.
 

 Analysis
 

 I. Appellate Jurisdiction
 

 As an initial matter, we must determine whether we possess jurisdiction over this appeal. Defendant's notice of appeal did not explicitly state that she was appealing the trial court's judgment to this Court as required by Rule 4(b) of the North Carolina Rules of Appellate Procedure.
 

 *356
 
 Defendant has filed a petition for a writ of
 
 certiorari
 
 in the event we find her notice of appeal was insufficient to confer jurisdiction upon this Court based on her failure to expressly state that her appeal was to this Court as required by Rule 4(b).
 

 Because this Court is the only court possessing jurisdiction to hear her appeal, it can be fairly inferred that Defendant intended to appeal to this Court.
 
 See
 

 State v. Sitosky
 
 ,
 
 238 N.C. App. 558
 
 , 560,
 
 767 S.E.2d 623
 
 , 624-25 (2014),
 
 disc. review denied
 
 ,
 
 368 N.C. 237
 
 ,
 
 768 S.E.2d 847
 
 (2015) (holding that appellate jurisdiction existed over defendant's appeal despite her failure to designate court to which appeal was being taken in notice of appeal). Moreover, the State has not suggested that it was misled due to this deficiency in her notice of appeal.
 

 Thus, Defendant's failure to designate this Court in her notice of appeal does not warrant dismissal of this appeal.
 
 See
 

 State v. Ragland
 
 ,
 
 226 N.C. App. 547
 
 , 553,
 
 739 S.E.2d 616
 
 , 620 (denying defendant's petition for
 
 certiorari
 
 where "defendant's failure to serve the notice of appeal and his mistake in failing to name this Court in his notice of appeal [did] not warrant dismissal"),
 
 disc. review denied
 
 ,
 
 367 N.C. 220
 
 ,
 
 747 S.E.2d 548
 
 (2013). Accordingly, we deny Defendant's petition for writ of
 
 certiorari
 
 as moot and proceed to consider the merits of her appeal.
 

 II. Validity of Indictment
 

 Our Supreme Court has made clear that "[a]n indictment must allege all the essential elements of the offense endeavored to be charged...."
 
 State v. Spivey
 
 ,
 
 368 N.C. 739
 
 , 742,
 
 782 S.E.2d 872
 
 , 874 (2016) (citation and quotation marks omitted). However, an indictment is not required to reference exceptions to the offense.
 
 State v. Mather
 
 ,
 
 221 N.C. App. 593
 
 , 598,
 
 728 S.E.2d 430
 
 , 434 (2012).
 

 N.C. Gen. Stat. § 14-399
 
 (a) states, in pertinent part, as follows:
 

 (a) No person, including any firm, organization, private corporation, or governing body, agents or employees of any municipal corporation shall intentionally or recklessly throw, scatter, spill or place or intentionally or recklessly cause to be blown, scattered, spilled, thrown or placed or otherwise dispose of any litter upon any public property or private property not owned by the person within this State or in the waters of this State including any public highway, public park, lake, river, ocean, beach, campground, forestland, recreational area, trailer park, highway, road, street or alley
 
 except
 
 :
 

 (1) When the property is designated by the State or political subdivision thereof for the disposal of garbage and refuse, and the person is authorized
 
 *361
 
 to use the property for this purpose; or
 

 (2) Into a litter receptacle in a manner that the litter will be prevented from being carried away or deposited by the elements upon any part of the private or public property or waters.
 

 N.C. Gen. Stat. § 14-399
 
 (a) (2015) (emphasis added).
 

 Defendant's indictment alleged, in relevant part, the following:
 

 The jurors for the State upon their oath present that on ... the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did intentionally and recklessly spill and dispose of litter on property not owned by the defendant, the property owned and controlled by the City of Greensboro and not into a litter receptacle as defined in General Statute 14-399(A)(2). The litter discarded was hazardous waste.
 

 The State does not dispute the fact that the indictment failed to allege that Defendant had not discarded litter on property "designated by the State or political subdivision thereof for the disposal of garbage and refuse[ ] and ... [was] authorized to use the property for this purpose" as set out in
 
 N.C. Gen. Stat. § 14-399
 
 (a)(1).
 
 [1]
 
 Thus, the sole issue in this appeal is whether subsection (a)(1) is an essential element under § 14-399(a) or, alternatively, it is merely an exception.
 

 In
 
 State v. Connor
 
 ,
 
 142 N.C. 700
 
 ,
 
 55 S.E. 787
 
 (1906), our Supreme Court explained the difference between an essential element to an offense (which must be alleged in the indictment) and an exception to the offense (which need not be alleged).
 

 It is well established that when a statute creates a substantive criminal offense,
 
 the description of the same being complete and definite
 
 , and by subsequent clause, either in the same or some other section, or by another statute, a certain case or class of cases is withdrawn or excepted from its provisions, these excepted cases need not be
 
 *358
 
 negatived in the indictment, nor is proof required to be made in the first instance on the part of the prosecution.
 

 In such circumstance, a defendant charged with the crime, who seeks protection by reason of the exception, has the burden of proving that he comes within the same.
 

 ....
 

 The test here suggested, however, is not universally sufficient, and a careful examination of the principle will disclose that
 
 the rule and its application depends not so much on the placing of the qualifying words, or whether they are preceded by the terms, "provided" or "except"; but rather on the nature, meaning and purpose of the words themselves.
 

 And if these words, though in the form of a proviso or an exception, are in fact, and by correct interpretation, but a part of the definition and description of the offense, they must be negatived in the bill of indictment.
 

 ....
 

 We find in the acts of our Legislature two kinds of provisos-the one in the nature of an exception, which withdraws the case provided for from the operation of the act, the other adding a qualification, whereby a case is brought within that operation. Where the proviso is of the first kind it is not necessary in an indictment, or other charge, founded upon the act, to negative the proviso; but if the case is within the proviso it is left to the defendant to show that fact by way of defense. But in a proviso of the latter description the indictment must bring the case within the proviso.
 
 For, in reality, that which is provided for, in what is called a proviso to the act, is part of the enactment itself.
 

 Id.
 
 at 701-03,
 
 55 S.E. at 788-89
 
 (internal citations and quotation marks omitted).
 

 Over the past century since
 
 Connor
 
 was decided, our Supreme Court has consistently held that an indictment must include all the essential elements of the offense charged against the defendant.
 
 See, e.g.
 
 ,
 
 State v. Brice
 
 , --- N.C. ----, ----,
 
 806 S.E.2d 32
 
 , 36 (2017) ) ("To be sufficient under our Constitution,
 
 *362
 
 an indictment must allege lucidly and accurately all the essential elements of
 
 *359
 
 the offense endeavored to be charged." (citation and quotation marks omitted));
 
 State v. Murrell
 
 , --- N.C. ----, ----,
 
 804 S.E.2d 504
 
 , 508 (2017) ("In order to satisfy the relevant statutory requirements, including the provision of adequate notice, an indictment must allege lucidly and accurately all the essential elements of the offense endeavored to be charged." (citation and quotation marks omitted));
 
 State v. Williams
 
 ,
 
 318 N.C. 624
 
 , 631,
 
 350 S.E.2d 353
 
 , 357 (1986) ("An indictment that does not accurately and clearly allege all of the elements of the offense is inadequate to support a conviction.");
 
 State v. McBane
 
 ,
 
 276 N.C. 60
 
 , 65,
 
 170 S.E.2d 913
 
 , 916 (1969) ("The warrant or indictment must charge all the essential elements of the alleged criminal offense. Nothing in G.S. 15-153 or in G.S. 15-155 dispenses with the requirement that the essential elements of the offense must be charged." (internal citation omitted));
 
 State v. Greer
 
 ,
 
 238 N.C. 325
 
 , 327,
 
 77 S.E.2d 917
 
 , 919 (1953) ("The authorities are in unison that an indictment, whether at common law or under a statute, to be good must allege lucidly and accurately all the essential elements of the offense endeavored to be charged.");
 
 State v. Johnson
 
 ,
 
 188 N.C. 591
 
 , 593,
 
 125 S.E. 183
 
 , 184 (1924) ("Even under a statute containing a proviso or an exception if the terms of the proviso are but a part of the description of the offense itself, they must be negatived in the indictment or warrant, and as a general rule, such negative averments must be proved by the prosecution.").
 
 [2]
 

 The offense of littering under
 
 N.C. Gen. Stat. § 14-399
 
 (a) is not a "complete and definite" crime absent consideration of subsections (a)(1) and (a)(2).
 
 Connor
 
 ,
 
 142 N.C. at 701
 
 ,
 
 55 S.E. at 788
 
 . Under § 14-399(a), the crime of littering is premised upon a defendant's act of disposing of or discarding trash in any place
 
 other than
 
 a waste receptacle (as provided for in subsection (a)(2)) or on property designated by the city or state for the disposal of garbage and refuse (as provided for in subsection (a)(1)). The text of the statutory language in § 14-399(a) prior to the word "except" does not state a crime when that language is read in isolation. Rather, subsections (a)(1) and (a)(2) are inseparably intertwined with the language preceding them.
 

 In
 
 State v. Hinkle
 
 ,
 
 189 N.C. App. 762
 
 ,
 
 659 S.E.2d 34
 
 (2008), this Court expressly addressed the issue of whether subsection (a)(2) constituted an essential element-rather than merely an exception-under
 
 *360
 
 § 14-399(a). The defendants in
 
 Hinkle
 
 were employees of the People for the Ethical Treatment of Animals and were tasked with the euthanasia of unwanted animals in the Bertie County animal shelter. They subsequently placed several dead animals in heavy duty trash bags, which they deposited in a private dumpster behind a grocery store. Law enforcement officers observed the defendants placing the trash bags in the dumpster and arrested them. The defendants were charged with multiple counts of cruelty to animals and with littering but were only convicted of the offense of littering under
 
 N.C. Gen. Stat. § 14-399
 
 (a).
 

 Id.
 

 at 763-65
 
 ,
 
 659 S.E.2d at 35-36
 
 .
 

 On appeal, the defendants argued that the trial court had erred by denying their motion to dismiss the littering charge because the State failed to prove that the dumpster in question was not a "litter receptacle" as described by § 14-399(a)(2).
 
 Id.
 
 at 768,
 
 659 S.E.2d at 37
 
 . The State, conversely, argued that it did not bear the burden of proving the inapplicability of § 14-399(a)(2) because this subsection was "not a part of the statutory definition of littering and instead [wa]s an exception to the crime of littering."
 
 Id.
 
 at 768,
 
 659 S.E.2d at 38
 
 (quotation marks omitted). This Court discussed the difference between essential elements of a criminal offense and exceptions to the offense.
 

 [W]e reiterate that there are no magic words for creating an exception to an offense. Neither is placement of a phrase controlling. The determinative factor is the nature of the language in question. Is it
 
 *363
 
 part of the definition of the crime or does it withdraw a class from the crime?
 

 Id.
 
 at 769,
 
 659 S.E.2d at 38
 
 (internal citations and quotation marks omitted).
 

 We then examined the language of § 14-399(a) and determined that subsection (a)(2) was, in fact, an essential element of the offense of littering. In so holding, we stated as follows:
 

 Therefore, we examine the nature of the littering statute's language and ask whether "[i]nto a litter receptacle" is part of the definition of the crime or whether it withdraws a class from the crime. It is clear that "[i]nto a littering receptacle" is part of the definition of the crime. If we read section (a) up to the word "except," then section (a) does not describe the complete crime of littering. Without the "except ... [i]nto a litter receptacle" language, placing a broken rubber band into a trash can at our Court would be littering. Likewise, throwing a spent coffee cup into a trash can at the mall would
 
 *361
 
 be littering. Such a reading of the statute is inconsistent with both the plain language of the statute and common sense.
 
 Essential to the crime of littering is that the litter be placed somewhere other than a litter receptacle.
 

 Id.
 

 (emphasis added). We concluded that "the trial court erred by denying defendants' motion to dismiss the littering charge because the State failed to present substantial evidence that the dumpster was not a litter receptacle."
 

 Id.
 

 Thus,
 
 Hinkle
 
 stands for the proposition that subsection (a)(2) is an essential element of
 
 N.C. Gen. Stat. § 14-399
 
 (a). Because subsections (a)(1) and (a)(2) serve identical purposes in this statute, it would be illogical to suggest that one is an essential element but the other is not.
 

 The dissent incorrectly characterizes the conclusion in
 
 Hinkle
 
 that subsection (a)(2) is an essential element of
 
 N.C. Gen. Stat. § 14-399
 
 (a) as "obiter dictum." Our Supreme Court has defined obiter dictum as "[l]anguage in an opinion not necessary to the decision...."
 
 Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc.
 
 ,
 
 313 N.C. 230
 
 , 242,
 
 328 S.E.2d 274
 
 , 281 (1985) (citations omitted). Based on that definition, this Court's determination in
 
 Hinkle
 
 that subsection (a)(2) constitutes an essential element of this offense is clearly not dicta. To the contrary, it forms the
 
 holding
 
 of the case, and we are therefore bound by it.
 
 See
 

 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." (citations omitted)).
 

 Moreover, in addition to the fact that we are bound to follow our prior decision in
 
 Hinkle
 
 , we believe that the analysis set forth therein is consistent with the applicable case law in North Carolina on this subject. We find our prior decisions in
 
 State v. Trimble
 
 ,
 
 44 N.C. App. 659
 
 ,
 
 262 S.E.2d 299
 
 (1980) and
 
 State v. Brown
 
 ,
 
 56 N.C. App. 228
 
 ,
 
 287 S.E.2d 421
 
 (1982) to be instructive on the issue of differentiating between essential elements and exceptions under a statute. Each of these cases provide clear examples of statutory provisions that-unlike in the present case-simply carve out an
 
 exception
 
 to a crime that was fully defined elsewhere in the statute.
 

 In
 
 Trimble
 
 , the defendant was convicted under
 
 N.C. Gen. Stat. § 14-401
 
 , which stated as follows:
 

 *362
 
 § 14-401.
 
 Putting poisonous foodstuffs, etc., in certain public places, prohibited
 
 -It shall be unlawful for any person, firm or corporation to put or place any strychnine, other poisonous compounds or ground glass on any beef or other foodstuffs of any kind in any public square, street, lane, alley or on any lot in any village, town or city or on any public road, open field, woods or yard in the country. Any person, firm or corporation who violates the provisions of this section shall be liable in damages to the person injured thereby and also shall be guilty of a misdemeanor, and upon conviction shall be fined or imprisoned, at the discretion of the court.
 
 This section shall not apply to the poisoning of insects or worms for the purpose of protecting crops or gardens by spraying plants, crops or trees nor to poisons used in rat extermination.
 

 *364
 

 Id.
 

 at 664
 
 ,
 
 262 S.E.2d at 302
 
 (citation and quotation marks omitted).
 

 The defendant argued that his indictment was defective because it failed to include an assertion that his actions did not fall under the exception for "protecting crops or gardens by spraying plants, crops or trees [or] poisons used in rat extermination."
 

 Id.
 

 (emphasis omitted). On appeal, we held that "the insect control and rat extermination exception" was not an essential element of the crime.
 
 Id.
 
 at 666,
 
 262 S.E.2d at 303-04
 
 .
 

 In
 
 Brown
 
 , the defendant was convicted of the crime of larceny by an employee.
 
 Brown
 
 ,
 
 56 N.C. App. at 229
 
 ,
 
 287 S.E.2d at 423
 
 .
 
 N.C. Gen. Stat. § 14-74
 
 , the statute under which the defendant was charged, provided as follows:
 

 If any servant or other employee, to whom any money, goods or other chattels ... by his master shall be delivered safely to be kept to the use of his master, shall withdraw himself from his master and go away with such money, goods, or other chattels ... with intent to steal the same and defraud his master thereof, contrary to the trust and confidence in him reposed by his said master; ... the servant so offending shall be punished as a Class H felon:
 
 Provided, that nothing contained in this section shall extend to ... servants within the age of 16 years
 
 .
 

 Id.
 

 at 229
 
 ,
 
 287 S.E.2d at 422-23
 
 (citation and quotation marks omitted and emphasis added).
 

 *363
 
 The defendant argued on appeal that his indictment was defective because it failed to allege that he was over the age of 16.
 
 Id.
 
 at 230,
 
 287 S.E.2d at 423
 
 . In rejecting his argument, this Court held as follows:
 

 Upon examining G.S. 14-74, we conclude that the phrase in question withdraws a class of defendants from the crime of larceny by an employee.
 
 The language before the phrase completely and definitely defines the offense. Servants within 16 years of age are excepted from that definition. Because the phrase creates an exception to G.S. 14-74, we hold that age is not an essential element which the indictment must allege and the State initially prove.
 

 Id.
 
 at 230-31,
 
 287 S.E.2d at 423
 
 (emphasis omitted and added).
 

 Trimble
 
 and
 
 Brown
 
 each provide examples of statutes that state "complete and definite" crimes before then listing exceptions to those crimes. In
 
 Trimble
 
 ,
 
 N.C. Gen. Stat. § 14-401
 
 criminalized the placement of poison or ground glass on "beef or other foodstuffs"-a prohibition that clearly articulated a crime capable of being committed in a wide variety of ways wholly unrelated to the use of poison to exterminate rats, insects, or worms. In
 
 Brown
 
 ,
 
 N.C. Gen. Stat. § 14-74
 
 made it a crime for an employee to steal from his employer property that had been entrusted to him. The crime described was capable of ready application to employees of all ages, but the statute carved out an exception for persons sixteen years of age or younger.
 

 Thus, it is clear that the statutory provisions at issue in
 
 Trimble
 
 and
 
 Brown
 
 were merely exceptions to crimes rather than essential elements of crimes. It is equally apparent that the converse is true here. By enacting § 14-399(a), the General Assembly was not attempting to prohibit individuals from disposing of trash outside of their own property. Instead, it sought to make such disposal illegal only in places
 
 other than
 
 (1) a waste receptacle; or (2) a city or county dump.
 
 [3]
 
 Simply put, the crime of littering does not occur until litter is placed where it ought not be.
 

 Any characterization of the text of § 14-399(a) prior to the word "except" as stating a "complete and definite" crime would lead to absurd
 
 *364
 
 results. In addition to the examples discussed above from our decision in
 
 Hinkle
 
 , under such an interpretation of the statute a trash collector disposing of waste in a city dump could be charged with littering and
 
 *365
 
 then have the burden of showing that his actions fell within an "exception" to the littering statute. It strains credulity to suggest that such outcomes were intended by the General Assembly in enacting § 14-399(a).
 
 See
 

 Burgess v. Your House of Raleigh, Inc.
 
 ,
 
 326 N.C. 205
 
 , 216,
 
 388 S.E.2d 134
 
 , 141 (1990) ("A statute is presumed not to have been intended to produce absurd consequences, but rather to have the most reasonable operation that its language permits.");
 
 Sutton v. Aetna Cas. & Sur. Co.
 
 ,
 
 325 N.C. 259
 
 , 265,
 
 382 S.E.2d 759
 
 , 763 (1989) ("[T]he Court will, whenever possible, interpret a statute so as to avoid absurd consequences.").
 

 Thus, Defendant's indictment was defective due to its failure to contain an essential element of the offense of littering. Accordingly, her conviction must be vacated.
 

 Conclusion
 

 For the reasons stated above, we vacate Defendant's conviction.
 

 VACATED.
 

 Judge ZACHARY concurs.
 

 Judge BERGER dissents in a separate opinion.
 

 BERGER, Judge, dissenting in separate opinion.
 

 I respectfully dissent.
 

 "A valid bill of indictment is essential to the jurisdiction of the Superior Court to try an accused for a felony and have the jury determine [her] guilt or innocence, and to give authority to the court to render a valid judgment."
 
 State v. Marshall
 
 ,
 
 188 N.C. App. 744
 
 , 748,
 
 656 S.E.2d 709
 
 , 712 (citations and internal quotation marks omitted),
 
 disc. review denied
 
 ,
 
 362 N.C. 368
 
 ,
 
 661 S.E.2d 890
 
 (2008). "The purpose of an indictment is to inform a party so that [she] may learn with reasonable certainty the nature of the crime of which [she] is accused."
 
 State v. Simpson
 
 ,
 
 235 N.C. App. 398
 
 , 400,
 
 763 S.E.2d 1
 
 , 3 (2014) (citation, quotation marks, brackets, and ellipses omitted).
 

 An indictment "is sufficient in form for all intents and purposes if it expresses the charge against the defendant in a plain, intelligible, and
 
 *365
 
 explicit manner."
 
 N.C. Gen. Stat. § 15-153
 
 (2015). "An indictment must contain '[a] plain and concise factual statement in each count which ... asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant ... of the conduct which is the subject of the accusation.' "
 
 State v. Rodriguez
 
 ,
 
 192 N.C. App. 178
 
 , 183,
 
 664 S.E.2d 654
 
 , 658 (2008) (quoting N.C. Gen. Stat. § 15A-924(a)(5) (2007) ). The purpose of this requirement is:
 

 (1) such certainty in the statement of the accusation as will identify the offense with which the accused is sought to be charged; (2) to protect the accused from being twice put in jeopardy for the same offense; (3) to enable the accused to prepare for trial, and (4) to enable the court, on conviction or plea of
 
 nolo contendere
 
 or guilty to pronounce sentence according to the rights of the case.
 

 State v. Greer
 
 ,
 
 238 N.C. 325
 
 , 327,
 
 77 S.E.2d 917
 
 , 919 (1953) (citations omitted).
 

 "The general rule in this State ... is that an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words."
 
 Simpson
 
 ,
 
 235 N.C. App. at 400-01
 
 ,
 
 763 S.E.2d at 3
 
 (citation and quotation marks omitted).
 

 To determine whether this indictment is sufficient, we must examine
 
 N.C. Gen. Stat. § 14-399
 
 and the law that distinguishes between elements of an offense and exceptions to that offense. It is well established that each essential element must be alleged in an indictment. While "the State bears the burden of production and persuasion as to each element of a crime, 'exceptions' to crimes are not considered elements for this purpose and are instead considered to be affirmative defenses."
 
 State v. Hinkle
 
 ,
 
 189 N.C. App. 762
 
 , 768,
 
 659 S.E.2d 34
 
 , 38 (2008). A statutory exception that withdraws a certain case, or class of cases, from its provisions need not be included in an indictment for that indictment to be valid.
 
 State v. Connor
 
 ,
 
 142 N.C. 700
 
 , 701,
 
 55 S.E. 787
 
 , 788 (1906).
 

 Here, Defendant was charged under Subsection (e) of
 
 N.C. Gen. Stat. § 14-399
 
 , which
 
 *366
 
 elevates the crime of littering to a Class I felony if the litter disposed of is hazardous waste. The crime of littering is defined, in relevant part, as follows:
 

 (a) No person ... shall intentionally or recklessly throw, scatter, spill or place or intentionally or recklessly cause to be blown, scattered, spilled, thrown or
 
 *366
 
 placed or otherwise dispose of any litter upon any public property or private property not owned by the person within this State ... including any public highway ...
 
 except
 
 :
 
 *357
 
 (1)
 
 When the property is designated by the State or political subdivision thereof for the disposal of garbage and refuse, and the person is authorized to use the property for this purpose
 
 ; or
 

 (2) Into a litter receptacle in a manner that the litter will be prevented from being carried away or deposited by the elements upon any part of the private or public property or waters.
 

 N.C. Gen. Stat. § 14-399
 
 (a) (2015) (emphasis added).
 

 The indictment filed against Defendant for her alleged violation of Subsection (e) stated:
 

 The jurors for the State upon their oath present that on or the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did intentionally and recklessly spill and dispose of litter on property not owned by the defendant, the property owned and controlled by the City of Greensboro and not into a litter receptacle as defined in General Statute 14-399 ( [a] )(2). The litter discarded was hazardous waste.
 

 It is clear from the language of the indictment that it contained no allegation of whether the hazardous waste was disposed of on property "designated by the State or political subdivision thereof for the disposal of garbage or refuse" or whether Defendant was "authorized to use the property for this purpose."
 
 See
 
 G.S. § 14-399(a)(1). If Section 14-399(a)(1) is an essential element, then the State was required to allege that Defendant was not excluded from criminal liability because she either disposed of the waste in a place not designated for such disposal or did dispose of the waste on such designated property but was not authorized to do so. The indictment alleged neither.
 

 In determining whether Subsection (a)(1) is an element or an exception, we must ask, "[i]s it part of the definition of the crime or does it withdraw a class from the crime?"
 
 State v. Brown
 
 ,
 
 56 N.C. App. 228
 
 , 230,
 
 287 S.E.2d 421
 
 , 423 (1982). This Court, in
 
 State v. Hinkle
 
 ,
 
 189 N.C. App. at 769
 
 ,
 
 659 S.E.2d at 38
 
 , stated that the " 'except ... [i]nto a litter
 
 *367
 
 receptacle' " language in Section 14-399(a)(2) was an essential element. The
 
 Hinkle
 
 Court reasoned that, without this language,
 

 placing a broken rubber band into a trash can at our Court would be littering. Likewise, throwing a spent coffee cup into a trash can at the mall would be littering. Such a reading of the statute is inconsistent with both the plain language of the statute and common sense.
 
 [4]
 

 Id.
 

 However, we are not bound by the language in
 
 Hinkle
 
 stating that Subsection (a)(2) is an element rather than an exception.
 
 [5]
 
 In
 
 Hinkle
 
 , the defendants were appealing the denial of a motion to dismiss a littering charge because the evidence tended to show that the defendants had disposed of dead animals in a dumpster.
 
 Id
 
 . at 765-66,
 
 659 S.E.2d at 36
 
 . The
 
 Hinkle
 
 defendants had
 
 *367
 
 argued on appeal that a dumpster was a "litter receptacle," and, because they had put their litter in a litter receptacle, Subsection (a)(2) excepted them from criminal liability.
 

 Id.
 

 "The State countered that because the dumpster was a private receptacle, defendants littered by placing dead animals into the dumpster."
 
 Id.
 
 at 766,
 
 659 S.E.2d at 36
 
 .
 
 Hinkle
 
 turned on whether a dumpster was a litter receptacle, and this Court held that it was.
 
 Id.
 
 at 767,
 
 659 S.E.2d at 37
 
 . The general expressions that followed were where the
 
 Hinkle
 
 Court considered whether Subsection (a)(2) was an essential element, and which party should bear the burden of proof, but neither of these considerations were necessary to the decision of the question involved.
 

 "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning."
 
 State v. Beck
 
 ,
 
 359 N.C. 611
 
 , 614,
 
 614 S.E.2d 274
 
 , 277 (2005) (citation omitted). "We presume that the use of a word in a statute is not superfluous and must be accorded [its plain] meaning, if
 
 *368
 
 possible."
 
 State v. Moraitis
 
 ,
 
 141 N.C. App. 538
 
 , 541,
 
 540 S.E.2d 756
 
 , 757-58 (2000). "Where a term used in a statute has obtained long-standing legal significance, we presume that the legislature intended that significance to attach to the use of the term, absent an indication to the contrary."
 
 Id
 
 . at 541,
 
 540 S.E.2d at 758
 
 . We "are without power to interpolate, or superimpose, provisions and limitations not contained" within the language of the statute.
 
 State v. Wainwright
 
 ,
 
 240 N.C. App. 77
 
 , 81,
 
 770 S.E.2d 99
 
 , 103 (2015) (citation and quotation marks omitted). "A statute that is clear on its face must be enforced as written."
 
 Moraitis
 
 ,
 
 141 N.C. App. at 541
 
 ,
 
 540 S.E.2d at 757
 
 .
 

 Our legislature is given "considerable latitude in defining elements of a crime and in specifying defenses to that crime."
 
 State v. Trimble
 
 ,
 
 44 N.C. App. 659
 
 , 665-66,
 
 262 S.E.2d 299
 
 , 303 (1980) (citation omitted). Furthermore, "to litter" means "to scatter about carelessly,"
 
 [6]
 
 and this is essentially what Section 14-399(a), up to the word "except," criminalizes. Subsection (a)(1) merely states that when one litters on property "designated by the State or political subdivision thereof for the disposal of garbage and refuse, and the person is authorized to use the property for this purpose," then that person is excepted from criminal liability.
 
 [7]
 

 This Court considered this same question in
 
 State v. Trimble
 
 and applied the following standard in determining whether an exception to a criminal statute should be regarded as an essential element or as an affirmative defense:
 

 [W]here, as in the instant case, the General Assembly has left open the question of whether a factor is to be an element of the crime or a defense thereto, it is more substantively reasonable to ask what would be a "fair" allocation of the burden of proof, in light of due process and practical considerations, and then assign as "elements" and "defenses" accordingly, rather than to mechanically hold that a criminal liability factor is an element without regard to the implications in respect to the burden of proof.
 

 Trimble
 
 ,
 
 44 N.C. App. at 666
 
 ,
 
 262 S.E.2d at 303
 
 . This Court concluded the statutory exception it examined was neither an element nor a defense,
 
 *369
 
 but found that it was a "hybrid" factor.
 

 Id.
 

 It held that for an exception such as this, "the State has no initial burden of producing evidence to show that defendant's actions do not fall within the exception."
 
 Id.
 
 at 666,
 
 262 S.E.2d at 303-04
 
 . "[H]owever, once the defendant, in a non-frivolous manner, puts forth evidence to show that his conduct is within this exception, the burden of persuading the trier of fact that the exception does not apply falls upon the State."
 
 Id
 
 . at 666,
 
 262 S.E.2d at 304
 
 . The
 
 Trimble
 
 Court concluded that "it follows from this reasoning that an indictment or warrant for an arrest need not set forth a charge that defendant's conduct is not within
 
 *368
 
 the exception to the statute."
 
 Id
 
 . (citation omitted).
 

 Trimble
 
 is analogous to the case
 
 sub judice
 
 . In applying the standard used in
 
 Trimble
 
 , we must conclude that Section 14-399(a)(1) is a "hybrid factor" or affirmative defense, not an essential element. Consequently, the fair allocation of the burden of proof must fall to Defendant. The State had no initial burden to prove that Defendant had not disposed of the oil on property designated for the disposal of garbage and refuse, or whether Defendant was not authorized to do so. Following the reasoning in
 
 Trimble
 
 , if Defendant were able, in a non-frivolous manner, to put forth evidence that shows she disposed of the oil on property designated for such disposal, and that she was authorized to do so, then the State would bear the burden of persuading the trier of fact that the exception does not apply.
 

 The State was not required to allege whether the property on which Defendant disposed of the oil was designated for such disposal or whether Defendant was authorized. The indictment clearly identified the offense charged, protected Defendant from double jeopardy, enabled Defendant to prepare for trial, and enabled the court to pronounce sentence. Therefore, the indictment charging Defendant with littering of hazardous waste was sufficient to give the trial court jurisdiction over her case, and I would find no error.
 

 [1]
 

 Defendant's indictment did, however, make specific reference to subsection (a)(2).
 

 [2]
 

 While the dissent cites several cases for the proposition that an indictment need not mirror the precise language contained in the statute,
 
 see, e.g.
 
 ,
 
 State v. Simpson
 
 ,
 
 235 N.C. App. 398
 
 , 400-01,
 
 763 S.E.2d 1
 
 , 3 (2014), that principle does not obviate the requirement that every essential element of the crime be alleged therein.
 

 [3]
 

 The dissent cites
 
 State v. Hales
 
 ,
 
 256 N.C. 27
 
 ,
 
 122 S.E.2d 768
 
 (1961), for the proposition that "it is within the power of the Legislature to declare an act criminal...."
 
 Id.
 
 at 30,
 
 122 S.E.2d at 771
 
 (citation omitted). But the dissent fails to mention our Supreme Court's statement in that same opinion that "the act of the Legislature declaring what shall constitute a crime must have some substantial relation to the ends sought to be accomplished."
 
 Id.
 
 at 30,
 
 122 S.E.2d at 770
 
 (citation omitted).
 

 [4]
 

 It is unquestionable that "[i]t is within the power of the Legislature to declare an act criminal."
 
 State v. Hales
 
 ,
 
 256 N.C. 27
 
 , 30,
 
 122 S.E.2d 768
 
 , 771 (1961).
 
 See also
 

 Mitchell v. Financing Authority
 
 ,
 
 273 N.C. 137
 
 , 144,
 
 159 S.E.2d 745
 
 , 750 (1968) (noting that "so long as an act is not [constitutionally] forbidden, the wisdom of the enactment is exclusively a legislative decision").
 

 [5]
 

 "Language in an opinion not necessary to the decision is
 
 obiter dictum
 
 and later decisions are not bound thereby. As our Supreme Court has explained, general expressions in every opinion are to be taken in connection with the case in which those expressions are used; if they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit where the very point is presented for decision."
 
 State v. Breathette
 
 ,
 
 202 N.C. App. 697
 
 , 701,
 
 690 S.E.2d 1
 
 , 4 (citations, internal quotation marks, and brackets omitted),
 
 disc. review denied
 
 ,
 
 364 N.C. 242
 
 ,
 
 698 S.E.2d 656
 
 (2010).
 

 [6]
 

 Litter
 
 ,
 
 Webster's New World College Dictionary
 
 (5th ed. 2014).
 

 [7]
 

 The legal commentary
 
 North Carolina Crimes: A Guidebook on the Elements of Crime
 
 classified
 
 N.C. Gen. Stat. § 14-399
 
 (a)(1) and (2) both as exceptions, not elements, until
 
 Hinkle
 
 called that into question. Jessica Smith, N.C. Inst. Of Gov't,
 
 North Carolina Crimes: A Guidebook on the Elements of Crime
 
 404 (6th ed. 2007).