IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-166

Filed 15 October 2024

Guilford County, No. 21 CRS 79319

STATE OF NORTH CAROLINA

v.

MILAN DION TANNER.

Appeal by defendant from judgment entered 5 June 2023 by Judge Lora C. Cubbage in Guilford County Superior Court. Heard in the Court of Appeals 11 September 2024.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Christopher J. Stipes, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Sterling Rozear, for the defendant-appellant.*

TYSON, Judge.

Defendant petitions for a writ of *certiorari* for this Court to review the trial court's judgment revoking Defendant's probation and activating Defendant's suspended sentence for willfully absconding supervision. We allow Defendant's petition, issue the writ, and affirm the trial court's judgment.

**I.      Background**

Milan Dion Tanner ("Defendant") a prior record level IV offender, voluntarily pled guilty to felony possession of a schedule II-controlled substance and felony possession of cocaine on 12 December 2022. The trial court sentenced Defendant in the presumptive range to two consecutive terms 8 to 19 months of imprisonment, suspended for 24 months of supervised probation. Defendant was placed on supervised probation.

Defendant's probation officer, Patra Smith ("Smith"), testified Defendant was assigned to her caseload on 12 December 2022 after he was released from custody. Defendant was ordered to report to the probation office within 48 hours of his release, *i.e.*, 14 December 2022. Defendant failed to report in-person, and instead he called Smith on 15 December 2022. Smith instructed Defendant to report to her in-person the next day, 16 December 2022. Defendant again failed to report in-person on 16 December 2022.

Smith further testified Defendant's criminal attorney had informed her that Defendant's wife had secured a 50B domestic violence protective order ("DVPO") against Defendant, and Defendant could not return to his former residence. *See* N.C. Gen. Stat. § 50B-1 to 50B-9 (2023). Smith explained the only address she had on file for Defendant was his former apartment, though she was informed Defendant was staying in a hotel and in the process of moving out of his home. Smith did not testify about whether Defendant had informed her of which hotel he was staying in, or if he

had provided his hotel's address. Smith testified Defendant only provided the hotel phone number he had called from.

On 17 December 2022, Smith called the number Defendant had provided and instructed him to report in-person to the office the following Monday, 19 December 2022. Defendant failed to report in-person on 19 December 2022. This 17 December 2022 phone call was the last contact Smith had with Defendant.

Smith visited the address on file for Defendant's former apartment to attempt to locate him. Per probation policy, Smith left a door tag with the telephone number and information for Defendant to return her call. Defendant missed three additional in-person reporting appointments.

Another probation officer was able to reach Defendant by phone on 2 March 2022. Defendant "stated he was unaware that he was on probation, because he had short-term memory loss and was located in Winston-Salem at the time." This probation officer instructed Defendant to report in-person on 3 March 2023 and sent a text to Defendant's cell phone to remind him. Defendant again failed to report. Defendant never submitted himself or appeared to Smith for probation supervision.

Smith filed probation violation reports alleging Defendant had violated his probation by committing multiple new criminal offenses and by willfully absconding supervision on 2 March 2023 and 22 March 2023. At a hearing held on 8 June 2023, the trial court found Defendant had willfully violated the terms and conditions of his

probation by absconding supervision, revoked his probation, and activated his sentence.

Defendant purports to appeal and has filed a petition for writ of *certiorari* in the event his notice of appeal is defective.

## II.    Jurisdiction

N.C.R. App. P. 4(a) requires a criminal defendant to enter notice orally at trial or in writing within fourteen days of entry of judgment.  N.C.R. App. P. 4(b) requires a written notice of appeal to specify the party taking the appeal, to specify "the judgment or order from which appeal is taken and the court to which appeal is taken", and to be signed by the appealing party's counsel.  Defendant timely filed his notice of appeal, specified the judgment from which appeal was taken, referenced the file numbers in the notice, and properly served the State.  The filed notice to appeal did not specify the appeal was to this Court.

In *State v. Rankin*, this Court held a criminal notice of appeal failing to designate this Court did not warrant dismissal of appeal "[b]ecause this Court is the only court possessing jurisdiction to hear [the] appeal, [and] it can be fairly inferred that Defendant intended to appeal to this Court." 257 N.C. App. 354, 356, 809 S.E.2d 358, 360 (2018), *aff'd*, 371 N.C. 885, 821 S.E.2d 787 (2018).

Here, Defendant referenced N.C.R. App. P. 4(b) in his notice of appeal, and it can be inferred he intended to appeal to this Court.  We allow Defendant's petition, issue the writ of *certiorari,* and address the merits of his arguments.

### III. Standard of Review

This Court has stated the standard of review applied to the revocation of a defendant's probationary sentence:

> A hearing to revoke a defendant's probationary sentence only requires . . . the evidence be such as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has willfully violated a valid condition of probation . . . The judge's finding of such a violation, if supported by competent evidence, will not be overturned absent a showing of manifest abuse of discretion.

*State v. Jones*, 225 N.C. App. 181, 183, 736 S.E.2d 634, 636 (2013) (citation omitted).

An abuse of discretion occurs "when a ruling 'is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *State v. Maness*, 363 N.C. 261, 279, 677 S.E.2d 796, 808 (2009) (citation omitted).

### IV. Analysis

N.C. Gen. Stat. § 15A-1343(b)(3a) (2023) requires a defendant on probation "[n]ot abscond by willfully avoiding supervision or by willfully making the defendant's whereabouts unknown to the supervising probation officer . . . ." Here, Defendant failed to initially appear or to respond to multiple directions to attend the required, in-person, agreed-upon appointments without justification or excuse.

Defendant also failed to give his probation officer his new physical address or the name and address of the hotel he was purportedly staying in. Defendant also left the area without required notice to Smith and traveled to Winston-Salem.

Based upon these facts, the trial judge could reasonably conclude Defendant

had absconded by "willfully avoiding supervision or by willfully making the defendant's whereabouts unknown to the supervising probation officer." *Id.*

## V.  New Criminal Charges While on Probationary Supervision

Defendant argues the trial court announced in open court, "the court is not going to move forward on the new conviction" allegation located in the 2 March 2023 violation report.  The written judgment indicates Defendant had "waived a violation hearing and admitted that he[] violated each of the conditions of his[] probation as set forth below" including allegations of multiple violations located in the 2 March 2023 violation report.

The statute provides two distinctive grounds upon which a trial court may revoke a defendant's probation, based upon its finding and conclusion: (1) the defendant willfully absconded supervision, pursuant to N.C. Gen. Stat. § 15A-1343(b)(3a); *or,* (2) the defendant committed a new criminal offense, pursuant to N.C. Gen. Stat § 15A-1343(b)(1).  *See State v. Johnson*, 246 N.C. App 132, 136, 782 S.E.2d 549, 552-53 (2016).

The trial court's written order on the AOC-CR-607 Judgment and Commitment included a checked box indicating Defendant had waived a hearing and admitted to the violations and the court was revoking Defendant's probation "for willful violation of the condition(s) that he/she not commit any criminal offense [] **_or_** abscond from supervision[] as set out above."  (emphasis supplied).  Any objection and asserted error in the trial court using the AOC-CR-607 Judgment and Commitment, which

uses the disjunctive "or" as grounds to revoke Defendant's probation is without merit. The trial court clearly found and concluded Defendant was "willfully avoiding supervision or by willfully making the defendant's whereabouts unknown to the supervising probation officer." N.C. Gen. Stat. § 15A-1343(b)(3a).

## VI.    Conclusion

The standard of review for a hearing "to revoke a defendant's probationary sentence only requires . . . the evidence be such as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has willfully violated a valid condition of probation[.]" *Jones*, 225 N.C. App. at 183, 736 S.E.2d at 636. A trial court's finding a defendant violated their probationary sentence "if supported by competent evidence, will not be overturned absent a showing of manifest abuse of discretion." *Id.*

Defendant has failed to show any abuse of discretion in the trial court's findings or conclusion to revoke his probation for willfully absconding. N.C. Gen. Stat. § 15A-1343(b)(3a). The trial court's judgment is affirmed. *It is so ordered.*

AFFIRMED

Judge WOOD concurs.

Chief Judge DILLON dissents by separate opinion.

DILLON, Chief Judge, dissenting.

I agree the State offered sufficient evidence that Defendant violated various conditions of his probation. However, as explained below, I do not believe the State met its burden to offer evidence showing that Defendant absconded *based on the conduct alleged in the probation violation reports*. Accordingly, I dissent.

I.     Analysis

The record shows that Defendant was released from prison on or about 13 December 2022 and placed on probation. Within three months, his probation officer filed two violation reports, alleging various conduct by Defendant.

Our General Assembly has mandated that before revoking the probation of a probationer, "[t]he State must give the probationer notice of the hearing and its purpose, including a statement of the violations alleged." N.C.G.S. § 15A-1345(e). Our Supreme Court has interpreted this language as a mandate that the State provide the probationer notice of his alleged non-complying "conduct":

> [T]he phrase "a statement of the violations alleged" [as used in G.S. 15A-1345(e)] refers to a statement of what a probationer *did* to violate his conditions of probation. It does not require a statement of the underlying conditions that were violated . . . [G.S. 15A-1345(e)] requires only a statement of the actions that violated the conditions [of probation], not the conditions that those actions violated.

*State v. Moore*, 370 N.C. 338, 341 (2017). *See also State v. Crompton*, 380 N.C. 228 (2022) (following *Moore*). "The purpose of the notice mandated by [G.S. 15A-1345(e)] is to allow the defendant to prepare a defense[,]" and "[a] statement of a defendant's

alleged actions that constitute the alleged violation will give that defendant the chance to prepare a defense because he will know what he is accused of doing." *Moore*, 370 N.C. at 342.

In reversing a trial court's order revoking probation, we held that a trial court errs when it relies in reaching its decision on conduct by the probationer that was not alleged in the notice. *See State v. Cunningham*, 63 N.C. App. 470, 475 (1983).

Here, the State alleged in its second probation violation report (dated 23 March 2023) that Defendant willfully absconded supervision as follows:

> The Defendant left his place of residence without prior approval or knowledge of his probation officer and failed to make his whereabouts known, making him unavailable for supervision. As of the date of this report, the Defendant's whereabouts are unknown and all efforts to locate the Defendant have been unsuccessful.

In the first violation report filed three weeks earlier (dated 2 March 2023), the State alleged that Defendant had violated *other* conditions of probation by failing to report to his supervising officer as directed on four occasions, specifically on 12/16/22, 1/30/23, 2/14/23, and 3/2/23, and that he had failed to obtain a substance abuse assessment as directed.[1]

I recognize the State has a *low* evidentiary bar at a probation hearing, as we review the trial court's order revoking Defendant's probation for an abuse of

---

[1] The first violation report also alleged that Defendant was charged on 3/4/23 with a misdemeanor. However, the trial court expressly stated that it was not basing its order of revocation on any allegation that Defendant had committed a new criminal offense.

discretion. *State v. Murchinson*, 367 N.C. 461, 464 (2014). Indeed, our Supreme

Court has stated

> [a]ll that is required is that the evidence be such as to
> reasonably satisfy the judge in the exercise of his sound
> discretion that the defendant has violated a valid condition
> upon which his sentence was suspended.

*State v. Robinson*, 248 N.C. 282, 285–86 (1958). However, we must also remember

that a trial court abuses its discretion when it revokes a defendant's probation where

*no evidence* is offered to support the allegation. As stated by our Supreme Court,

> [t]here *must be* substantial evidence [to support the trial
> court's determination] that defendant has in fact breached
> the condition in question. *In the absence of such proof, the
> defendant is entitled to his discharge as a matter of right
> and not of discretion.*

*State v. Millner*, 240 N.C. 602, 605 (1954) (emphasis added).

Here, I simply do not believe the State met its evidentiary burden to support

its allegation that Defendant absconded by "[leaving] his place of residence without

prior approval or knowledge of his probation officer and fail[ing] to make his

whereabouts known, making him unavailable for supervision." Rather, as explained

below, the evidence shows: Defendant's probation officer had both the phone number

of the motel where Defendant was staying and Defendant's cell phone number; the

probation officer knew he was reachable by phone; and she knew, or should have

known, that her means of contacting him at the address on file would be ineffective.

And the State offered no evidence to rebut Defendant's evidence that the probation

officer knew the specific motel where he was staying.

The evidence offered at the hearing *in the light most favorable to the State* (from the testimony of Defendant's probation officer) shows as follows:

On or about 7 December 2022, about a week before Defendant was released from prison, Defendant's wife was granted a domestic violence protective order ("DVPO") against Defendant that prevented Defendant from returning to the marital home.

On or about 13 December 2022, defendant was released from prison.

Two days later, on 15 December 2022, he moved out of the marital home and moved into a motel in Greensboro. The probation officer testified that she spoke with Defendant on that same day via a direct phone number to his motel room. She testified that she was aware of his DVPO, that he was staying at a motel, and that Defendant provided her with his phone number at the motel.

> [Attorney]: [T]he address that you had for him [his marital residence where he was no longer allowed to be] is the one that he provided to you?
>
> [Probation Officer]: Correct. When we spoke on the phone on the 17th, again, he was inside of a hotel room. He did explain to me that he was in the process of moving out of that apartment complex. However, this was the only address that we had on file to locate him. . . .
>
> [Attorney]: And when you called him, that was the number he provided – a phone number that he provided to you?
>
> [Probation Officer]: Correct. From the hotel.

She testified that she told him to report to her in person the next day, 16 December 2022. However, Defendant did not report on that day. She testified that she did speak to Defendant the next day on 17 December 2022.

The probation officer never testified that she ever tried to reach Defendant again by phone or by leaving any notice *at the motel* prior to the filing of the first probation report on 2 March 2023. She never testified that Defendant would not respond when someone from her office tried to reach him by phone. And such conduct is not alleged in the notices. Rather, the probation officer testified that she followed "the protocol" of her office when a probationer misses an appointment, by placing notices on the door *of Defendant's marital home* directing Defendant to call her and to report on a specified date:

> [Attorney]: Okay. And with regards to [the violation alleged that Defendant had missed four appointments,] could you inform the Court about these?
>
> [Probation Officer]: Yes. So we reached out - - our policy is whenever we start the absconding process, we have to go out to the residence that we know, leave a door tag with our telephone number and our information for them to call back. So he did miss those appointments.

However, she used this means of trying to communicate with Defendant even though she knew Defendant was not allowed to be at his marital home, based on the DVPO.

Defendant, though, affirmatively testified that he told her in their initial conversation that he was living at the Sands Motel in Greensboro. The State argues in its brief that "the record lacks competent evidence to support Defendant's

5

contention that [the probation officer] knew where Defendant was residing." But it is <u>the State</u> who has the burden to present evidence that the probation officer *did not know* in which hotel Defendant was residing. *Millner*, 240 N.C. at 605. The probation officer, however, never testified that she did *not* know the name of the motel. The State simply never asked her. She did, however, testify that she had the phone number of the motel where Defendant was staying by testifying that she called that number and spoke with Defendant on the day he moved into the motel.

Therefore, since the State has the burden, we must assume the probation officer knew the specific motel where Defendant was living. We must also assume Defendant was always reachable by telephone. No evidence was provided that Defendant failed to answer his telephone. For instance, though the probation officer testified she never spoke with Defendant by telephone after mid-December 2022, she did testify in passing that others in her office did speak to Defendant by telephone on at least two occasions. And she testified that on 2 March 2023—the date of the first probation report—her office was able to reach Defendant on his cell phone, suggesting Defendant procured a cell phone and provided the number to the probation office.

The probation officer's means of notifying Defendant of issues and appointments, by hanging notices on the door of a home where she knew Defendant was not allowed to be, was unreasonable when it is assumed that she had his motel address and phone number. Therefore, these missed appointments should not serve as a basis for finding that Defendant willfully absconded.

Admittedly, Defendant did violate *other* conditions of his probation by failing to show up for appointments *he knew about* and by failing to get an assessment, as alleged in the first notice. But these violations do not amount to absconding, where there is uncontradicted evidence the probation officer knew where Defendant was living and had his phone number. The State simply failed to "connect the dots" that Defendant absconded through the conduct *as alleged in the notices*.

In sum, I do not believe the State offered evidence to prove the conduct it alleged Defendant engaged in to abscond, that he "left his place of residence without prior approval or knowledge of his probation officer and failed to make his whereabouts known, making him unavailable for supervision." However, because the State did offer evidence, which the trial court announced it was not considering, which would support revoking Defendant's probation (evidence that Defendant committed a new criminal offense), my vote is to vacate the order and remand for consideration of the allegation that Defendant committed a new criminal offense.